IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| ENNIS JOHNSON, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | NO. 7:20-CV-022-O |
| § | |
| MOHAMMAD MEHDI ANSARI, et al., § | |
| § | |
| Defendants. § | |

**OPINION AND ORDER**

Before the court is the motion of Defendants, Mohammad Mehdi Ansari and Marcia J. Odal, for summary judgment. ECF No. 55-1. Upon review of the motion, the response of Plaintiff, Ennis Johnson, the reply, the record, and applicable authorities, the Court finds that the motion should be **GRANTED**. In addition, Plaintiff's pending motions for the Court to designate genuine issues of material fact, ECF No. 71, and for reconsideration of the Court's order denying Plaintiff's motion to compel discovery, ECF No. 74, should be **DENIED**. And, Plaintiff's sur-reply, titled "Plaintiff's Reply to Defendants' Response-Reply for Their Summary Judgment," ECF No. 58, which he was not authorized to file, should be **STRICKEN**.[1]

**I.    BACKGROUND**

The operative pleading is Plaintiff's amended complaint, ECF No. 23. Plaintiff, an inmate confined in the Allred Unit of the Texas Department of Criminal Justice, complains that Defendants, two medical doctors, were deliberately indifferent to his medical needs and conspired to cause him harm by denying care.[2] *Id.* at 4. He alleges that Dr. Odal denied his requests for chest

---

[1] The Court notes that consideration of the sur-reply would not have changed the outcome.
[2] In his response, Plaintiff argues that this is not a case about disagreement between doctor and patient, but rather "about an assault committed by [Plaintiff's] doctor who performed an invasive surgical procedure on [Plaintiff]

x-rays and referral to a cardiologist. *Id.* at 6–9. He alleges that Dr. Ansari failed to perform a chest x-ray or cardiac catheterization. *Id.* at 8–9. Plaintiff seeks injunctive relief as well as compensatory and punitive damages. *Id.* at 4, 11–12.

Defendants seek summary judgment on the grounds that they are entitled to qualified immunity, that neither of them was deliberately indifferent to Plaintiff's medical needs, and that sovereign immunity bars Plaintiff's claims against them in their official capacities. ECF No. 55.

## II. APPLICABLE LEGAL STANDARDS

### A. Summary Judgment

The Court set forth the applicable summary judgment standards in its order signed September 30, 2021, denying Plaintiff's motion for summary judgment. ECF No. 62.

Pertinent here, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is "material" only if it might affect the outcome of the case. *Id.* at 248. Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a

---

without legal consent." ECF No. 56 at 2. That is not a claim made in this lawsuit. ECF No. 23. Nor is there any claim that Defendants' "actions towards plaintiff [led] to him suffering two heart attacks later in the year of 2019." ECF No. 56 at 2.

2

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be "clearly established," that right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson*, 483 U.S. at 639-40. In *Harlow*, the Supreme Court explained that a key question is "whether that law was clearly established at the time an action occurred," because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. *Elder v. Holloway*, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that the plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by the plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d

3

1209, 1212 (5th Cir. 1989). Even if defendants are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. *Cass v. City of Abilene*, 814 F.3d 721, 730-31 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. In *Hunter*, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley*, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.

502 U.S. at 229. "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. *Kovacic v. Villareal*, 628 F.3d 209, 211-12 (5th Cir. 2010); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. *White v. Pauly*, 137 S. Ct. 548, 551 (2017). That is, the clearly established law upon which the plaintiff relies should not be defined at a high level of generality, but must be particularized to the facts of the case. *Id.* at 552. Thus, failure to identify a case where an officer acting under similar

4

circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.*; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

### C. Deliberate Indifference

The Eighth Amendment proscribes cruel and unusual punishments, which the Supreme Court has interpreted to include deliberate indifference to serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For deliberate indifference to rise to the level of a constitutional violation, the plaintiff must establish that the defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A defendant's "failure to alleviate a significant risk that he should have perceived but did not" does not constitute a constitutional violation. *Id.* at 838. Deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires the plaintiff to show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino*, 239 F.3d at 756). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.[3]

---

[3] The cases cited by *Gobert* do not explain what such exceptional circumstances might be. Whether to provide additional treatment is a classic example of a matter for medical judgment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino*, 239 F.3d 752, 756 (5th Cir. 2001).

## III. ANALYSIS

Plaintiff's extensive medical records reflect that he submitted a constant and unremitting stream of sick call requests about his alleged medical problems and that he was seen on a regular basis by medical professionals, including Defendants. ECF No. 55, Ex. A. Pertinent parts of the records are accurately summarized in the expert report of Benjamin J. Leeah, M.D. *Id.*, Ex. B. As the records make clear, Plaintiff is fixated on a "first degree heart block" and unable to accept that it is a conduction problem not a blocked artery. *See, e.g.*, ECF No. 55-2 at 154, 162, 167, 181. For example, Dr. Odal saw Plaintiff on March 22, 2018, noting that he had submitted ten similar sick call requests so far that month regarding cardiac and circulatory problems and refused to accept the lack of objective evidence to support such problems. *Id.* at 181–82. On March 23, he submitted a sick call request alleging that he suffered from debilitating heart disease and that his circulation was becoming more and more crippled. *Id.* at 179. The next day, he requested to see if he was diabetic. *Id.* Dr. Odal saw him on March 29, noting that Plaintiff was convinced he had coronary artery disease although there was no objective evidence to support that belief. Further, his blood pressure was at goal despite Plaintiff's poor compliance with taking his hypertension medicine as ordered. *Id.* at 178–80. Tests confirmed that Plaintiff did not have diabetes. *Id.* at 323, 324; ECF No. 55-4 at 3, ¶ 10.

Dr. Ansari saw Plaintiff on December 18, 2018, for follow-up of procedures ordered by another cardiologist. ECF No. 55-3 at 693–94. Dr. Ansari noted Plaintiff's new complaint of claudication (here, lower extremity pain with exercise). His plan included scheduling a cardiac catheterization and bilateral ankle-brachial indices and bilateral lower extremity arterial Doppler studies to assess blood flow in Plaintiff's legs. *Id.* at 693. On January 16, 2019, Plaintiff underwent

6

angiography of both legs. ECF No. 55-2 at 278–81. The postoperative diagnosis was sluggish distal flow without significant stenosis and hypertension. *Id.* at 278. Dr. Ansari recommended that Plaintiff be started on medication and follow up with a rheumatologist. *Id.* at 280. On January 17, 2019, Plaintiff underwent the Doppler study, *id.* at 41, which was normal. ECF No. 55-4 at 8, ¶ 33.

Besides attacking Defendants' conduct with reference to Plaintiff's earlier motion for summary judgment, which is simply not relevant to the pending motion, Plaintiff focuses on the lack of a document bearing his signature to reflect informed consent for the procedure performed on January 16 and on Plaintiff's contention that Dr. Ansari was aware of a note in Plaintiff's records reflecting his threat to sue Dr. Odal. ECF No. 56. Neither of these matters, even if true, raises a genuine issue of material fact that would preclude the granting of summary judgment. Informed consent is simply not relevant to Plaintiff's claims in this action. ECF No. 23. In any event, the record reflects that Dr. Ansari ordered the angiography of Plaintiff's legs in response to Plaintiff's complaint of claudication. The report of the procedure reflects that Plaintiff gave his informed consent. ECF No. 55-2 at 279. Contrary to Plaintiff's contention, Defendants were not obligated to produce a copy of Plaintiff's signed consent form. As for the allegation that Dr. Ansari was aware of a note in Plaintiff's records reflecting that Plaintiff had threatened to sue Dr. Odal, Plaintiff's contention is wholly speculative, as is his conclusion that Dr. Ansari must have decided not to perform the heart catheterization based on the note.[4] The only logical conclusion to be drawn from the records is that Plaintiff often threatened to sue his medical providers and they continuously saw him and evaluated his complaints, no matter how unfounded, and provided

---

[4] One of Plaintiff's handwritten sick call requests reflects that Dr. Solomon Spiegel made the decision to guide the device through Plaintiff's legs instead of his heart on January 16, 2019. ECF No. 55-3 at 387. Plaintiff appeared to have no problem with that test having been performed inasmuch as he wanted the cilostazol ordered by the cardiologist, Dr. Ansari, following the test to be restarted. *Id.* at 388.

appropriate care.

The summary judgment evidence establishes that Defendants were not deliberately indifferent to any serious medical need of Plaintiff. The matters on which Plaintiff focuses do not establish a genuine issue of material fact. At best, the record shows that Plaintiff continually disagreed with his medical providers about his medical condition, the tests that needed to be undertaken, and the prescriptions to address his needs. Such disagreement is insufficient to establish a claim of deliberate indifference. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Plaintiff does not dispute that any claims against Defendants in their official capacities are claims against the State of Texas and are barred by the Eleventh Amendment.

## IV.   CONCLUSION

For the reasons discussed, the motion for summary judgment is **GRANTED**; Plaintiff take nothing on his claims against Defendants; and, such claims are **DISMISSED WITH PREJUDICE**. Further, Plaintiff's motions for the Court to designate genuine issues of material fact, ECF No. 71, and for reconsideration of the Court's order denying Plaintiff's motion to compel discovery, ECF No. 74, are **DENIED**. And, Plaintiff's sur-reply, titled "Plaintiff's Reply to Defendants' Response-Reply for Their Summary Judgment," ECF No. 58, is **STRICKEN.**

**SO ORDERED** on this 17th day of February, 2023.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**